
FILED
2014 May-30 PM 03:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| ADAM HADDER, ) | |
| ) | |
| Plaintiff; ) | |
| ) | |
| vs. ) | 6:14-cv-00586-LSC |
| ) | |
| WALKER COUNTY, ) | |
| ALABAMA, et al., ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OF OPINION AND ORDER

Plaintiff Adam Hadder ("Hadder") brought this action under 42 U.S.C. § 1983 ("§ 1983") and Ala. Code § 36-25-24, seeking damages based on his termination as a Walker County sheriff's deputy. Defendants have moved to dismiss this action with prejudice for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Defendant John Mark Tirey has also raised the defense of qualified immunity. (Doc. 2.) The issues have been fully briefed, and for the reasons stated below, the Court will direct Hadder to file an amended complaint if he wishes to pursue his claims in this Court.

I. **BACKGROUND**[1]

Hadder worked for approximately fifteen years as a Walker County sheriff's deputy, spending most of those years as a member of the Narcotics Enforcement Team ("NET"). At all times relevant to this suit, Defendant John Mark Tirey ("Tirey") was the elected sheriff of Defendant Walker County, Alabama ("Walker County").

As a member of the NET, Hadder investigated drug-related offenses, made undercover drug buys, and seized both drugs and cash from suspects. The NET had a bank account to fund its operations, which included forfeited money from convicted suspects. Paul Kilgore ("Kilgore"), Walker County's chief deputy and NET director, was an authorized signatory on the account. Hadder claims that Kilgore misappropriated funds by paying various personal expenses from the account.

Hadder claims that his job status suffered when he began to take steps to report Kilgore's potential mishandling of cash seized in a June 2010 arrest. During that arrest, Hadder and other NET officers seized $8,000.00 in cash along with drug evidence. The cash was transported to the sheriff's office where it was counted,

---

[1] As this case is before the Court on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts as true the facts contained in Hadder's complaint. *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 (11th Cir. 2014).

photographed, and turned over to Kilgore. After the NET completed this portion of the investigation, an agent with the Federal Bureau of Investigation ("FBI") contacted Hadder and sought to take over the case in order to initiate a federal prosecution. Hadder delivered the case file and drug evidence but indicated that the money had been turned over to Kilgore.

Apparently, the FBI encountered difficulties obtaining the cash evidence. A grand jury subpoenaed the sheriff's office, requesting that the cash be delivered to the FBI office in Birmingham, Alabama. After the sheriff's office received the subpoena, Hadder requested a meeting with Tirey and informed him that he suspected Kilgore of wrongdoing. According to Hadder, Tirey told him not to report his suspicions to anyone. However, Hadder then met with Bill Adair, the Walker County district attorney, to discuss Kilgore. Finally, when Kilgore attempted to turn in $8,000.00 in cash to the FBI in denominations that did not match the description of the seized cash, Hadder told the FBI about both Kilgore and Tirey.[2]

Some time after he reported Kilgore's conduct, Hadder claims that Tirey purported to shut down the NET due to financial hardship. Although Hadder and his

---

[2] According to Hadder, the deputies seized $8,000.00 in cash of various denominations during the arrest. When Kilgore turned over the cash to the FBI, he attempted to turn over the cash solely in one hundred dollar bills.

partner were cast from the NET, the complaint alleges that other members of the NET, including Kilgore, continued to work in the NET. Shortly after the NET was supposedly shut down, Kilgore retired from the sheriff's department and then committed suicide several days later.

According to Hadder, his relationship with Tirey further deteriorated after Kilgore's death. Tirey blamed Hadder for Kilgore's death, called him a "snitch," and accused him of destroying NET property even though he had been deprived of all access to the NET. Additionally, Hadder claims that an attorney proceeded to file several lawsuits against him to provide an excuse for his termination. These events culminated in Tirey firing Hadder on September 27, 2012. Hadder then filed his complaint on March 31, 2014, in this Court.

## II.   STANDARD OF REVIEW

Rule 8(a) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 129 S. Ct. 1937, 1950 (2009). Instead, "[t]o survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 678, 129 S. Ct. at 1949 (internal quotations omitted). *Iqbal* establishes a two-step process for evaluating a complaint. First, the Court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679, 129 S. Ct. at 1950. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Factual allegations in a complaint need not be detailed, but they "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007).

## III.   DISCUSSION

### A.   Procedural Due Process Claim

Under the Constitution, "[t]he Due Process Clause requires, at a minimum, notice and the opportunity to be heard incident to the deprivation of life, liberty or property at the hands of the government." *Nati'l Assoc. of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1316 (11th Cir. 2011). In order to make out a procedural due process claim, a plaintiff must plead: "'(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3)

constitutionally-inadequate process.'" *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)). "Generally, a public employee has a property interest in continued employment if state law or local ordinance in any way limits the power of the appointing body to dismiss an employee." *Ross v. Clayton Cnty., Ga.*, 173 F.3d 1305, 1307 (11th Cir. 1999) (internal quotation marks omitted). The Defendants concede that "[a]rguably, Plaintiff has alleged a deprivation of a property interest and state action." (Doc. 2-1 at 2.) However, they contend that the complaint failed to allege any facts to suggest that the process for terminating Hadder was constitutionally inadequate.

Although Hadder has pleaded facts to suggest that he was entitled to *some* form of due process, "the question remains what process [was] due." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600 (1972). If a state provides adequate post-deprivation remedies, no pre-deprivation hearing is required to satisfy due process where holding such a hearing would be impracticable. *Nat'l Assoc. of Bds. of Pharmacy*, 633 F.3d 1297, 1317 (11th Cir. 2011) (citing *McKinney v. Pate*, 20 F.3d 1550, 1562–63 (11th Cir. 1994) (en banc)). However, when an employee has a property interest in continued employment, due process requires that he receive a hearing *before* being

terminated. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493 (1985); *Davis v. Scherer*, 468 U.S. 183, 193, 104 S.Ct. 3012, 3018 n.10 (1984). Under *Loudermill*, a plaintiff is not entitled to a full evidentiary hearing, but the hearing must serve as "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." 470 U.S. at 545–46, 105 S.Ct. at 1495. To satisfy due process, an employee must be given "notice and an opportunity to respond." *Id.* at 546, 105 S.Ct. at 1495. Hadder has attempted to allege a procedural due process claim against both Tirey and Walker County for failing to provide him with a pre-termination hearing.

Turning to the complaint, Hadder pleaded few facts relating to his termination and no facts regarding the process that he received. Instead, Hadder's pleaded facts amount to a defense that there was no *substantive* reason to terminate him, whereas a procedural due process claim is premised on a denial of adequate process *regardless* of the merits of the plaintiff's assertions. *See Carey v. Piphus*, 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1054 (1978) (describing procedural due process as an "absolute" right that does not depend on the "merits of a claimant's substantive assertions"). Regarding his termination, Hadder pleaded that Tirey used the civil lawsuits against him "as a

pretextual reason for terminating [his] employment with the County on September 27, 2012." (Doc. 1 at 8 ¶ 42.) Similarly, he alleged that "Tirey, and the County, deprived [him] of his employment, under color of state law when plaintiff was terminated in retaliation for having revealed Kilgore's illegal activities." (Doc. 1 at 9 ¶ 46.) From these facts, it is impossible to tell what process, if any, Hadder received prior to his termination. Without any well-pleaded facts to suggest that Hadder was denied notice and some opportunity to respond to the charges against him, he has not stated a plausible claim that he was denied a pre-termination hearing. *See Harrison v. Wille*, 132 F.3d 679, 683–84 (11th Cir. 1998).

In response to the motion to dismiss Hadder attempted to supplement his complaint by providing additional facts in his brief. He noted in his brief that he received an August 20, 2012, letter indicating that he was suspended due to complaints about his work. Then, on September 13, 2012, he received a letter from Tirey indicating that he would be terminated and informing him of his right to a hearing. Although Hadder requested a hearing, it was subsequently postponed. He contends that he was fired on September 27, 2012, after a hearing was held to which Hadder received no notice.

However, the Court will not consider these facts on a motion to dismiss because

they are neither part of the complaint nor an attachment thereto. *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) ("Ordinarily, we do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss."). Thus, Hadder's complaint fails to state a procedural due process claim.

Instead of dismissing the complaint, Hadder requested in his brief an opportunity to amend if the Court found that the complaint was insufficient. (Doc. 5 at 11.) Generally, "[t]he Court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the Court need not grant leave to amend if a proposed amendment would be futile. *See Mann v. Palmer*, 713 F.3d 1306, 1316 (11th Cir. 2013). Tirey argues that any amendment of the § 1983 claim would be futile as to his actions because he would be entitled to qualified immunity. Additionally, both Defendants contend that an amended complaint would fail to state a claim because Hadder failed to pursue available state remedies after he was terminated.

First, as to qualified immunity, "[a] government official acting in the course and scope of his employment is shielded from suit against him in his individual capacity if, while performing a discretionary function, his conduct did not violate a clearly established constitutional right of which a reasonable person would have known."

*Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1198 (11th Cir. 2012) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). The Court must consider the defense of qualified immunity as soon as possible in the litigation, including at the motion to dismiss stage. *See Hunter v. Bryant*, 502 U.S. 224, 233–34, 112 S. Ct. 534, 539–40 (1991) ("Because qualified immunity protects government officials from suit as well as from liability, it is essential that qualified immunity claims be resolved at the earliest possible stage of litigation.").

In support of qualified immunity, Tirey argues that he has absolute authority to hire and fire sheriff's deputies. *See Terry v. Cook*, 866 F.2d 373, 377 (11th Cir. 1989) (determining that sheriff's deputies could not state a § 1983 claim when the sheriff declined to reinstate deputies who did not support him in a political case). However, *Terry* merely recognizes that "loyalty to the individual sheriff and the goals and policies he seeks to implement through his office is an appropriate requirement for the effective performance of a deputy sheriff." 866 F.2d at 377. Thus, the Eleventh Circuit concluded that a sheriff could terminate his deputies for political reasons, but the Court did not address whether a deputy has procedural due process rights incident to a termination.

Moreover, Tirey's contention goes to whether Hadder had a *property right* in

continued employment, not the amount of process that was due if he did. The Defendants conceded that Hadder had pleaded a property interest in his employment. (Doc. 2-1 at 2.) The Supreme Court has clearly recognized a due process violation when an individual with a property interest in his continued employment is terminated without a hearing. *See Loudermill*, 470 U.S. at 542, 105 S.Ct. at 1493 (emphasizing that an employee with a property interest in his employment is entitled to a pre-termination hearing). Likewise, the Eleventh Circuit has recognized such a procedural due process right. *See, e.g., Harrison*, 132 F.3d at 683–84 (considering whether the plaintiff was denied a pre-termination hearing). Thus, if Hadder can plead sufficient facts to suggest that he was denied any pre-termination hearing, he could state a violation of a clearly established constitutional right.[3]

Finally, both Defendants argue that an amended complaint would be futile because Hadder failed to pursue state remedies that were available to him. *See*

---

[3] The Court notes that it even if Tirey challenged whether Hadder had a property interest in continued employment, Hadder could probably plead additional factual material to suggest that he had such an expectation. Walker County sheriff's deputies are subject to the protections of the Walker County Civil Service Board. *See* Ala. Const. Amend. 655. In his brief, Hadder cites a Walker County regulation that he claims entitles him to the pre-termination proceedings under *Loudermill*. (Doc. 5 at 10.) While Hadder did not include this information in his complaint, the Defendants also did not contest that Hadder pleaded a property interest in his continued employment. Moreover, Alabama law recognizes that not all sheriff's deputies are purely "at will" employees and that in some cases they may be entitled to the pre-termination protections under *Loudermill*. *See Fowler v. Johnson*, 961 So. 2d 122, 131–32 (Ala. 2006) (recognizing that under a state law due process claim a deputy sheriff was entitled to a pre-termination hearing that satisfies *Loudermill*).

*McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir. 1994) ("When a state procedure is inadequate, no procedural due process has been violated unless and until the state fails to remedy that inadequacy."). However, "[p]ost-deprivation remedies do not provide due process if pre-deprivation remedies are practicable." *Fetner v. City of Roanoke*, 813 F.2d 1183, 1186 (11th Cir. 1987). In cases of public employment, the Supreme Court has recognized that termination without *any* pre-termination hearing is an independent violation of due process. *See Loudermill*, 470 U.S. at 542, 105 S.Ct. at 1493 (emphasizing that an employee with a property interest in his employment is entitled to a pre-termination hearing). Thus, where, as here, the plaintiff seeks to allege that he was deprived any pre-termination due process hearing, he may be able to state a claim without alleging that he availed himself of all available state remedies. *See Harrison*, 132 F.3d at 683–84 (examining an alleged denial of a pre-termination hearing without considering post-deprivation remedies); *see also Ogburia v. Cleveland*, 380 F. App'x 927, 929–30 (11th Cir. 2010) (evaluating post-termination due process rights based on *McKinney* and a pre-termination due process claim as a separate claim based on *Loudermill*).

At this stage in the litigation, it does not appear that giving Hadder an opportunity to amend his complaint would necessarily be futile. *Cf. Manzini v. The*

*Fla. Bar*, 511 F. App'x 978, 983 (11th Cir. 2013) (determining that an amendment would be futile because it would be impossible for an amendment to avoid the conclusion that qualified immunity applies). Hadder has indicated that he might be able to allege the deprivation of a protected property interest in continued employment without *any* pre-termination due process hearing. Thus, the Court will give Hadder an opportunity to file an amended complaint within fifteen days of this Memorandum of Opinion and Order. If Hadder does not amend his complaint within this time, the Court will dismiss Hadder's § 1983 due process claim with prejudice. In the event that Hadder files an amended complaint, the Court will consider the motion to dismiss moot, and give the Defendants can determine whether it would be appropriate to file a motion to dismiss the amended complaint.

    B.  State Law Claim

  Hadder also brought a claim against both Tirey and Walker County for purported violations of Ala. Code § 36-25-24, which prohibits retribution when public employees report ethics violations. There is no independent basis for federal jurisdiction over this state law claim between non-diverse parties, and thus the Court must determine whether to exercise its supplemental jurisdiction. *See Ardestani v. U.S. Dep't of Justice, Immigration & Naturalization Serv.*, 904 F.2d 1505, 1515 (11th

Cir. 1990) (noting that district courts must dismiss claims when they lack subject matter jurisdiction). Supplemental jurisdiction, codified at 28 U.S.C. § 1367, "reflects a dichotomy between a district court's power to exercise supplemental jurisdiction, § 1367(a), and its discretion not to exercise such jurisdiction, § 1367(c)." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 742 (11th Cir. 2006). This Court has the power to decide this claim because it forms "part of the same case or controversy" as the procedural due process claim. *See* 28 U.S.C. § 1367(a). Both claims stem from the adverse employment action against Hadder after he attempted to report what he thought was wrongful conduct in the sheriff's department. *See Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta*, 701 F.3d 669, 679 (11th Cir. 2012) (noting that claims are part of the same case or controversy when they "derive from a common nucleus of operative fact" (internal quotation marks omitted)).

However, under § 1367(c), the Court may decline to exercise supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Any one of these grounds is reason to decline jurisdiction. *Parker*, 468 F.3d at 743. Hadder's complaint fails to state a federal claim that can survive a Rule 12(b)(6) motion to dismiss. If Hadder does not amend his complaint to state a proper federal cause of action, the Court will dismiss this state law claim without prejudice so that Hadder can pursue it in an appropriate state court. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").

### IV.   CONCLUSION

For the reasons stated above, the Court DIRECTS Hadder to file an amended complaint within fifteen (15) days of the date of this Memorandum of Opinion and Order if he wishes to pursue his claims in this Court. If Hadder files an amended complaint, the Court will consider the motion to dismiss moot, and the Defendants will be free to determine whether it would be appropriate to file a motion to dismiss the amended complaint. However, if Hadder does not file an amended complaint, the Court will grant the motion, dismissing the § 1983 claim with prejudice and the state law claim without prejudice.

Done this 30th day of May 2014.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
174256