IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| ADAM HADDER, ) | |
| ) | |
| Plaintiff; ) | |
| ) | |
| vs. ) | 6:14-cv-00586-LSC |
| ) | |
| WALKER COUNTY, ) | |
| ALABAMA, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

MEMORANDUM OF OPINION

Plaintiff Adam Hadder ("Hadder") brought this action under 42 U.S.C. § 1983 and Ala. Code § 36-25-24, seeking damages based on his termination as a Walker County sheriff's deputy. Before the Court are Defendants Walker County and Sheriff John Mark Tirey's ("Tirey") renewed motion to dismiss (Doc. 11) and motion for summary judgment (Doc. 15). Tirey also raises the defense of qualified immunity. The issues have been fully briefed and are ripe for review. For the reasons stated below, Defendants' motion for summary judgment is due to be granted with respect to the § 1983 claim. The remaining state law claim is to be dismissed without prejudice. Defendants' renewed motion to dismiss is to be denied as moot.

I.  **BACKGROUND**

Hadder worked as a Walker County sheriff's deputy for approximately fifteen years. At all times relevant to this suit, Defendant Tirey was the elected sheriff of Walker County. Hadder was a member of the Narcotics Enforcement Team ("NET") while working as a Walker County sheriff's deputy. NET officers investigated drug-related offenses, and routinely seized both drugs and cash from suspects. The NET had a bank account to fund its operations that included forfeited money from convicted suspects. Hadder claims that NET director Paul Kilgore ("Kilgore") misused NET funds by paying for personal expenses with the account.

Hadder further claims that his job status began to suffer once he took steps to report Kilgore's mishandling of cash seized as part of a June 2010 arrest. After the NET completed its portion of the investigation related to the arrest, the Federal Bureau of Investigation ("FBI") sought to take over the case to initiate federal prosecution. However, the FBI encountered problems when attempting to obtain the cash from Kilgore. Eventually, a grand jury subpoenaed the Sheriff's Department in an effort to have the cash evidence delivered to the FBI. After the subpoena was delivered, Hadder told Sheriff Tirey that he suspected Kilgore of wrongdoing. According to Hadder, Tirey told him not to report his suspicions to anyone else.

In late 2011, Kilgore finally turned over the cash to the FBI. However, the cash was delivered to the FBI in denominations that apparently did not match the description of the seized cash, which prompted Hadder to tell the FBI that he suspected Kilgore of wrongdoing. The NET was shut down on January 23, 2012 following an FBI search of the NET offices. Kilgore retired on January 30, 2012, and committed suicide shortly thereafter. Hadder claims that his relationship with Tirey further deteriorated after Kilgore's death, as Tirey blamed him for Kilgore's suicide.

On August 16, 2012, a formal citizen's complaint was filed against Hadder after Hadder arrested an individual that attempted to serve him with process. It was the second citizen's complaint filed against Hadder in less than a year. Tirey suspended Hadder with pay while the complaints were investigated.[1] On September 4, 2012, Hadder filed a grievance with the Walker County Civil Service Commission. Hadder argued in his grievance letter that the citizen complaints were actually filed at the direction of a Walker County attorney who held a grudge against Hadder due to a 2009 arrest. Hadder now alleges that Tirey conspired with this attorney to file the citizen complaints, and that the citizen complaints were actually a pretext to remove

---

[1] Both citizen complaints allege that Hadder was verbally abusive and subjected the complainants to unlawful arrests. One complaint stems from conduct occurring in December of 2011, while the second stems from conduct occurring in July of 2012. A third complaint is undated and not referenced in the notice of suspension.

Hadder from his position following the Kilgore incident. (Doc. 8, at ¶ 24.)

On September 13, 2012, Hadder received a letter of proposed termination from Tirey. The letter informed Hadder that he had a right to request a hearing, as well as a right to respond in writing to any allegations. (Doc. 16-1, at 17.) Hadder and Tirey scheduled a hearing for September 19, 2012. Hadder appeared at the Sheriff's Department offices for the hearing, but Tirey was sick and asked that the hearing be rescheduled. The hearing was rescheduled for September 21, 2012. Tirey sent Hadder a text message informing Hadder of the rescheduled date and time. Hadder initially agreed by text message to the date of the rescheduled hearing, but later asked that the hearing to be rescheduled so that his attorney could be present.

Tirey rescheduled the pre-termination hearing for September 27, 2012. The Sheriff's Department attempted to hand-deliver to Hadder a letter stating the new date and time. However, due to the fact that Hadder's property was gated and Hadder's dogs were roaming the property freely, the Sheriff's Department was unable to hand-deliver the letter. Instead, the individual attempting delivery left the notice on the gate and spoke in-person to Mr. Hadder's father concerning the notice, as Hadder's parents lived next door. Tirey also sent Hadder a text message telling him

the date and time of the third rescheduled hearing.[2] Hadder claims never to have received this text message.

Hadder did not attend the rescheduled hearing, and instead wrote a letter to Tirey. In the letter, Hadder stated that he was "responding to [Tirey's] allegations in writing" and had already "provided [Tirey] with sufficient documentation of [Hadder's] total innocence." (*Id.* at 27.) The letter further stated that Hadder received no notice of the hearing, but was nonetheless aware of the correct date and time due to "the onslaught of media talk and the rumor mill." (*Id.*) The letter closed with Hadder telling Tirey to "please consider this my response to your wrongful allegations." (*Id.*) Hadder was terminated on September 27, 2012 after he failed to appear for his hearing. Tirey says that he reviewed this letter, as well as all other materials submitted by Hadder, before making the final decision to fire Hadder. The Walker County Civil Service Board affirmed Hadder's termination following a three-day hearing.

Hadder filed this action on March 31, 2014. Hadder's § 1983 claim is based on an alleged violation of pre-termination procedural due process. Walker County and

---

[2] Tirey's first text message to Hadder telling him of the rescheduled hearing stated the wrong day of the week. However, Tirey followed up three minutes later with another text message telling Hadder the correct day and the exact time of the hearing.

Tirey previously filed a motion to dismiss for failure to state a claim, and Tirey further argued that he was entitled to qualified immunity with respect to the § 1983 claim. This Court found that Hadder failed to adequately plead a violation of pre-termination procedural due process, but gave Hadder leave to amend his complaint. The Court also refused to grant qualified immunity to Tirey at the time, since allowing Hadder an opportunity to amend his complaint was not necessarily futile. Hadder filed his amended complaint on June 10, 2014. Walker County and Tirey now bring a renewed motion to dismiss and a motion for summary judgement.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Avenue CLO Fund, Ltd. v. Bank of Am., NA*, 723 F.3d 1287, 1294 (11th Cir. 2013). There is a "genuine dispute" as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The trial judge should not weigh the evidence but must simply determine whether there are any genuine issues that should be resolved

at trial. *Id.* at 249.

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (citing *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *Id.* Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327(1986).

## III. Discussion

### A. Due Process Violation

A procedural due process claim requires that a plaintiff show "'(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action;

and (3) constitutionally-inadequate process.'" *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)). Due process typically requires that any deprivation of "life, liberty, or property be preceded by notice and the opportunity for a hearing." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal quotation marks omitted); *see also id.* ("We have described the 'root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest'" (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971))).

### 1. Adequacy of Pre-Termination Procedures

Hadder's § 1983 claim alleges a pre-deprivation violation of procedural due process. In other words, Hadder argues that he was fired without first being provided a "constitutionally adequate" opportunity to rebut the accusations against him. While due process requires some form of initial hearing, the type of pre-deprivation procedure required will vary based on the nature of the case. *See id.* at 545 (stating that "'[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceeding'" (quoting *Boddie*, 401 U.S. at 378)). As explained in *Loudermill*, the

"essential requirements of due process" are simply "notice and an opportunity to respond." *Id.* at 546 (stating that the opportunity to respond can be either in person or in writing). Thus, a plaintiff typically is not entitled to a full evidentiary hearing before termination. Rather, the primary goal of pre-termination procedures is to serve "as an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–46; *see also* Mary Massaron Ross, *American Bar Association—Sword & Shield: A Practical Approach to Section 1983 Litigation* § 6.II.B (2006) (stating that "[w]hen post-termination administrative procedures are available, pre-termination procedures function only as an initial check").

While the Eleventh Circuit has acknowledged that termination of a police officer's employment is a "significant deprivation," it has also noted that the government has a significant interest in maintaining an effective police force by terminating deputies who have engaged in official misconduct. *See Harrison v. Wille*, 132 F.3d 679, 684 (11th Cir. 1998). In fact, the Eleventh Circuit has stated, in the context of a case involving a police deputy fired for alleged misconduct, that "'[a]ffording an employee the opportunity to respond after being confronted with

charges is all that pretermination due process requires of the employer.'" *Id.* (quoting *Buckner v. City of Highland Park*, 901 F.2d 491, 496 (6th Cir. 1990)).

Turning to this case, Hadder received all the pre-termination procedural safeguards that due process requires. Tirey gave Hadder the opportunity to attend a pre-termination hearing to contest the accusations against him, yet Hadder did not attend.[3] Instead, Hadder wrote a letter to Tirey contesting the citizen complaints and offering his side of the story. In this letter, Hadder acknowledged that there was a hearing scheduled for Thurday, September 27th. However, Hadder elected not to attend the hearing, and instead told Tirey to "please consider [the letter] my response to your wrongful allegations." Hadder further stated in the letter that he had previously provided Tirey with all the evidence necessary to support his innocence. Tirey says that he considered the contents of the letter—as well as all other evidence submitted by Hadder—before making the final decision to fire Hadder. (Doc. 16-1, at 4.) Finally, there was a post-deprivation administrative proceeding in place in the form of the Walker County Civil Commission hearing. Such a formalized, trial-like post-deprivation proceeding emphasizes that any pre-termination procedures were simply an "initial check" against a wrongful decision, and therefore need not have been

---

[3] Though Hadder admits in the letter to being aware of the hearing, he nonetheless argues that he lacked sufficient notice of the hearing. The Court will address this issue shortly.

elaborate.[4]

Hadder had an opportunity to attend a pre-termination hearing contesting his firing. Furthermore, Hadder actually did respond to the allegations against him in writing, and the contents of the writing were considered by Tirey before Hadder was terminated. Therefore, Hadder received all the pre-termination procedural safeguards required by the Due Process Clause.

### 2. Notice

Separate from the adequacy of the pre-termination procedures, Hadder also argues that he lacked sufficient notice to make use of the procedural safeguards in place. Hadder makes this argument despite the fact that he admits in his letter to Tirey

---

[4] However, contrary to Defendants' arguments, this does not mean that the presence of adequate post-deprivation procedures can always cure a violation of pre-deprivation procedural due process. Unless pre-termination procedures are "impracticable," firing an employee with a vested interest in continued employment requires some degree of pre-deprivation due process. *Loudermill*, 470 U.S. at 542. Furthermore, while the requirement for pre-deprivation procedures may be excused where "impracticable," to consider the situation in this case impracticable would be to make a rule out of the exception. The impracticability exception originates from *Parratt v. Taylor*, 451 U.S. 527, 540–41 (1981), which involved the random, unauthorized action of a state employee that led to deprivation of a plaintiff's property. Because such conduct cannot be predicted, the Supreme Court found that requiring a pre-deprivation hearing was impossible, and therefore excused the requirement. *Id.* In contrast, the alleged deprivation here occurred as part of a formalized termination process. Furthermore, it was wholly foreseeable that the Sheriff's Department's termination proceedings could lead to a deprivation of a protected interest. *See Fetner v. City of Roanoke*, 813 F.2d 1183, 1185–86 (11th Cir. 1987) (finding that pre-termination procedures were required where plaintiff's alleged deprivation was "caused by a conscious and deliberate act" and the defendant "had ample time to give [plaintiff] notice and offer him an opportunity to be heard before they fired him").

that he was aware of the correct date and time of the hearing, and elected instead to respond in writing to the allegations against him.

Notice under the Due Process Clause is a flexible concept, as there are no fixed standards for what constitutes sufficient notice. Rather, notice under the Due Process Clause is context-specific, and looks at whether the means of notice was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Notice should be more than a mere gesture, and may account for the "practicalities and particularities" of the individual case at issue. *Id*. 339 U.S. at 314–15. Due process may be satisfied even when a party does not actually receive notice. *See Weigner v. New York*, 852 F.2d 646, 649 (2d Cir. 1988) (stating that "[t]he proper inquiry is whether the state acted reasonably in selecting means likely to inform persons affected, not whether each [person] actually received notice" (citing *Mullane*, 339 U.S. at 315))).

Even viewing the facts in the light most favorable to Hadder, this Court is convinced that the methods used to provide Hadder with notice were "reasonably calculated" to ensure he actually did receive notice. The Walker County Sheriff's Department hand-delivered to Hadder the first notice of proposed termination, thus

putting Hadder on notice of his right to a hearing contesting the action. When the hearing was forced to be rescheduled a third time at Hadder's request, the Sheriff's Department attempted to hand-deliver a new notice to Hadder, but was unable to do so since Hadder's gate was drawn and his dogs were roaming freely on the property. Thus, the Sheriff's Department discussed the notice with Hadder's father, who lived next door. Furthermore, Tirey informed Hadder directly of the hearing by sending Hadder a text message. Text messaging was an established means of communication between Hadder and Tirey for discussing the pre-termination proceedings, as the two exchanged thirteen text messages in the days leading up to Hadder's termination.[5] Furthermore, Hadder indicated in a text message that he would "be listening for [Tirey]" concerning the date for the rescheduled hearing (Doc. 16-1, at 14), suggesting that Hadder himself expected to receive any rescheduling updates via text message.

Furthermore, the Court notes that Hadder had actual knowledge of the date and time of the hearing on September 27th, 2012, but nonetheless elected to respond solely in writing to the allegations against him. Courts have routinely found that actual knowledge of an impending action and its consequences relieves any notice concerns.

---

[5] In fact, Hadder initially requested his administrative hearing via a text message, which further suggests that text message was a "reasonable means" of contacting Hadder concerning the rescheduled hearing. Also, because due process may be satisfied even when notice is not actually received, *see Weigner*, 852 F.2d at 649, Hadder's claim that he did not receive notice by text message or otherwise will not by itself overcome a motion for summary judgment.

*See, e.g.*, *Moreau v. Fed. Energy Regulatory Comm'n*, 982 F.2d 556, 569 (D.C. Cir. 1993) (stating that "the Due Process Clause does not require notice where those claiming an entitlement to notice already knew of the matters of which they might be notified"); *United States v. One 1987 Jeep Wrangler Auto.*, 972 F.2d 472, 482 (2d Cir. 1992) (stating that "by virtue of [claimant's] admitted actual knowledge of the seizure, the lack of a latter publication of notice did not arise to the level of a due process violation"); *Crocker v. Fluvanna Cnty. Va. Bd. of Pub. Welfare*, 859 F.2d 14, 16 (4th Cir. 1988) (deciding that failure of a government employer to inform a terminated employee of certain post-termination rights did not violate due process when the employee admitted to being fully aware of those rights). As stated in his letter to Tirey, Hadder knew of the date and time of his pre-termination hearing, but instead chose not to attend. He cannot now argue that he lacked sufficient notice of that hearing.[6]

---

[6] Furthermore, this Court disagrees with Hadder's argument that he was not given enough time to prepare for the September 27th hearing. Hadder was notified of his suspension on August 20th, and received his notice of proposed termination on September 13th. This timing is in line with what the Eleventh Circuit has found to be sufficient. *See Harrison*, 132 F.3d at 681, 684 (finding that enough time was given to prepare for a pre-termination hearing where the plaintiff was first notified in writing of the charges against him on August 22nd and had his last opportunity to respond before termination in September of the same year). Furthermore, Hadder asserted in his letter to Tirey that Tirey had already been provided with "sufficient documentation" to prove Hadder's innocence, suggesting that Hadder himself felt like two weeks was enough time to mount a pre-termination case against dismissal.

In summary, the evidence shows that Hadder was given both notice and an opportunity to respond. Hadder elected to respond in writing, and that response was considered by Tirey before he made the final decision to terminate Hadder. Thus, there is no genuine dispute of material fact as to whether Hadder received adequate pre-termination procedural due process. Defendants' motion for summary judgment is therefore due to be granted on Hadder's § 1983 claim.

### B.   Qualified Immunity for Due Process Claim

This Court also notes that, even if it were to decide that there was a violation to Hadder's pre-termination procedural due process rights, Tirey would be immune from suit due to qualified immunity. A state official acting within the scope of his employment is "shielded from suit against him in his individual capacity if, while performing a discretionary function, his conduct did not violate a clearly established right of which a reasonable person would have known." *Chandler v. Sec'y of Fla. Dept. of Transp.*, 695 F.3d 1194, 1198 (11th Cir. 2012) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When deciding whether a right is "clearly established," courts must define the right at issue with specificity, taking into account the unique facts of the case. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (stating that "we have instructed that courts should define the 'clearly established' right at issue on the basis

of the 'specific context of the case'" (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001))). However, this Court remains mindful to draw all factual inferences in favor of the non-movant when doing so.

Considering the factual contours of this case when framing the "right at issue," Tirey's conduct was reasonable in that it violated no "clearly established" pre-termination right. The undisputed facts reveal that Hadder received some degree of pre-deprivation "notice and opportunity to respond," as required by the Due Process Clause. On September 13, 2012, Hadder received notice of his proposed termination and of the fact he was entitled to hearing. Tirey attempted hand-delivery of the third rescheduling notice, and sent Hadder a text message containing the date and time of the rescheduled hearing. Hadder was aware of the date and time of his rescheduled hearing, but elected to respond in writing instead.

This Court is aware of no similarly-situated case that has clearly articulated a need for more pre-termination process than what Tirey gave to Hadder. In fact, Tirey afforded significantly more process than what the Eleventh Circuit has suggested must be provided to plaintiffs in similarly-situated cases. *See Harrison*, 132 F.3d at 684 (stating that a terminated sheriff's deputy "need only be given an opportunity to present his side of the story" for pre-termination procedural due process to be met).

Thus, Tirey cannot be said to have "fair warning" that his actions violated Hadder's pre-termination procedural due process rights. *See Tolan*, 134 S. Ct. at 1866 (stating that "'the salient question . . . is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional" (quoting *Hope*, 536 U.S. at 741))).

    C.    **State Law Claim**

Hadder also brought a claim against both Tirey and Walker County under Ala. Code § 36-25-24, which prohibits retribution when public employees report ethic violations. There is no independent basis for federal jurisdiction over this state law claim, and thus the Court must determine whether to exercise supplemental jurisdiction under 28 U.S.C. § 1367 (2012). Section 1367 "reflects a dichotomy between a district court's power to exercise supplemental jurisdiction, § 1367(a), and its discretion not to exercise such jurisdiction, § 1367(c)." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 742 (11th Cir. 2006). While this court has the power to decide state law claims that form "part of the same case or controversy" as the federal anchor claim, the Court may decline to do so if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (2012).

Since summary judgment is due to be granted against Hadder's sole federal claim, this Court declines to exercise supplemental jurisdiction over Hadder's remaining state law claim. *See* 28 U.S.C. § 1367(c)(3); *see also Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state law claims when, as here, the federal claims have been dismissed prior to trial."). Therefore, Hadder's claim based on Ala. Code § 36-25-24 is due to be dismissed without prejudice so that Hadder may refile the claim in state court.

## IV. Conclusion

For the foregoing reasons, Walker County and Tirey's motion for summary judgment (Doc. 15) is GRANTED with respect to Hadder's § 1983 claim. Furthermore, Hadder's remaining state law claim based on Ala. Code. § 36-25-24 is DISMISSED without prejudice so that he may refile it in the appropriate forum. Defendants' renewed motion to dismiss (Doc. 11) is DENIED as moot.

A separate Order will be entered.

Done this <u>2nd</u> day of <u>October</u> 2014.

                              L. SCOTT COOGLER
                        UNITED STATES DISTRICT JUDGE
                                                177822